OPINION
{¶ 1} On December 14, 2006, Defendant, Steven M. Ulrich, used a knife to stab both Thomas Morris and Robert Limehouse. The three were then in the room of the Studio 6 Motel, in Montgomery County, along with Defendant's girlfriend, Brenda Bond. All four had spent the previous hours smoking crack and *Page 2 
drinking beer.
 {¶ 2} Defendant was charged with two counts of felonious assault with a deadly weapon, R.C. 2903.11(A)(2), and two counts of felonious assault that resulted in serious bodily harm, R.C. 2903.11(A). He was convicted of all four offenses following a jury trial, and was sentenced to a combination of consecutive and concurrent prison terms totaling ten years.
 {¶ 3} Defendant filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 4} "THE TRIAL COURT ERRED BY NOT ALLOWING THE DEFENSE COUNSEL TO EXPLORE THE SELF DEFENSE DEFENSE OR CONSIDER A WITNESS'S PRIOR FELONY CONVICTIONS WHEN THEY PUT THEIR CREDIBILITY AT ISSUE UPON TAKING THE WITNESS STAND."
 {¶ 5} Defendant Ulrich claimed that he acted in self-defense when he stabbed Morris and Limehouse. Self-defense is "an excuse or justification, peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence," R.C.2901.05(C)(2), and it relieves an offender of criminal liability when it is proved.
 {¶ 6} "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray, Stewart v. State (1852), 1 Ohio St. 66, 75;State v. Doty (1916), 94 Ohio St. 258, *Page 3 113 N.E. 811; State v. Morgan (1919), 100 Ohio St. 66, 72, 125 N.E. 109; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. Marts v. State (1875),26 Ohio St. 162, paragraph two of the syllabus; State v. Champion (1924),109 Ohio St. 281, paragraph one of the syllabus, 142 N.E. 141; State v.Sheets (1926), 115 Ohio St. 308, 310, 152 N.E. 664; and (3) the slayer must not have violated any duty to retreat or avoid the danger,State v. Peacock (1883), 40 Ohio St. 333, 334; Graham v. State (1918),98 Ohio St. 77, 79, 120 N.E. 232." State v. Melchior (1978),56 Ohio St.2d 15, 20-21.
 {¶ 7} Defendant Ulrich called Brenda Bonds to testify. During her direct examination by Defendant's attorney, the following colloquy occurred:
 {¶ 8} "Q. At some point did a — did Mr. Morris threaten Mr. Ulrich?
 {¶ 9} "A. He looked at Mr. Limehouse and I (sic) wanted to know why Mr. Limehouse is not taking Steve out?
 {¶ 10} "Q. What did you take that to mean?
 {¶ 11} "MR. BARRENTINE: Objection, relevancy.
 {¶ 12} "THE COURT: Sustained.
 {¶ 13} "BY MR. MARSHALL: *Page 4 
 {¶ 14} "Q. Did he say anything else?
 {¶ 15} "MR. BARRENTINE: Objection, hearsay.
 {¶ 16} "THE COURT: Sustained.
 {¶ 17} "BY MR. MARSHALL:
 {¶ 18} "Q. Did Mr. Morris threaten Mr. Ulrich?
 {¶ 19} "MR. BARRENTINE: Objection, that calls for hearsay.
 {¶ 20} "THE COURT: That's sustained." (T. 433-434)
 {¶ 21} Defendant argues on appeal that the trial court erred when it sustained the State's objections, because "`taking Steve (Ulrich) out' goes directly to Mr. Ulrich's claim of self defense." (Brief, p. 5).
 {¶ 22} The State's objection was not to Bond's testimony concerning what she heard Morris say. It was instead to Defendant's question to Bonds: "What did you take that to mean?"
 {¶ 23} The trial court did not err when it sustained the objection. Defendant's belief that he was in imminent danger of death or great bodily harm inflicted by Morris is relevant to prove his self-defense claim. Melchior. Brenda Bond's belief in that regard is irrelevant. The objection was proper and was correctly sustained.
 {¶ 24} In any event, evidence of Morris's threat was admitted, and Ulrich later testified: "When they said take me *Page 5 
out, I thought they were going to kill me or mess me up." (T. 465). The court's prior ruling in no way inhibited Defendant's claim that he acted in self-defense.
 {¶ 25} Defendant Ulrich testified that after Morris suggested to Limehouse that they "take (Defendant) out," and Brenda Bonds had left the room, that Morris and Limehouse began to beat Defendant. It was then that he acted to protect himself, and stabbed his two assailants, but Defendant was unable to remember actually wielding the knife.
 {¶ 26} During Defendant Ulrich's direct testimony, the following colloquy occurred:
 {¶ 27} "Q. What were some of the reasons that you were afraid of Mr. Morris?
 {¶ 28} "A. Well, he told me before some stories about when he grabbed somebody, punched him in the face, wait for him to wake back up, there he would be bang, knock him out again. Another one he went to Florida and he killed somebody, because he saved some girl from a dope house.
 {¶ 29} "Q. Now, did you believe these stories?
 {¶ 30} "A. Very much. He's very convincing. He blew out a policeman's windshield right in Moraine City. Took the cop's gun from him and blew the windshield out.
 {¶ 31} "Q. So — *Page 6 
 {¶ 32} "A. He's a five-time felon.
 {¶ 33} "MR. BARRENTINE: Objection, Your Honor.
 {¶ 34} "THE COURT: Sustained.
 {¶ 35} "MR. BARRENTINE: Move to strike.
 {¶ 36} "THE COURT: It will be stricken. That the statements to be ignored, not given any weight or purpose.
 {¶ 37} "MR. MARSHALL: That was the very last part, correct?
 {¶ 38} "THE COURT: The felon part, that's correct." (T. 470-471.)
 {¶ 39} Evidence of a witness's convictions for felony-grade offenses is admissible pursuant to Evid.R. 609 if directed to the limited purpose of impeaching the witness's credibility. State v. Cash (1988),40 Ohio St.3d 116. Defendant's statement that Morris is "a five time felon" was not offered for that purpose, however. It was instead offered to prove that Defendant had a bona fide belief that he was in danger of death or great bodily harm from Morris, which was relevant to prove Defendant's claim of self-defense. Melchior. In that respect, and to the extent that it was probative of Morris's propensity for violence, evidence that Morris is "a five-time felon" was admissible as a "pertinent character trait of the victim of the crime offered by an accused." Evid.R. *Page 7 
404(A)(2). The trial court erred when it sustained the State's objection and excluded the evidence Defendant offered.
 {¶ 40} The State argues that the error was nevertheless harmless because the State elicited evidence from Morris concerning his felony convictions (T. 115), and because Morris testified about his specific acts of past violence, including a fight with Defendant Ulrich (T. 132-133) and a fight with another man that Morris told Defendant about. (T. 135).
 {¶ 41} An error is nevertheless harmless, and must be disregarded, when it does not affect substantial rights. Crim.R. 52(A). If an error would deny a defendant a fair trial, and a substantial right is affected, it is reversible error. State v. Wade (1978),53 Ohio St.2d 182. It is the burden of a defendant who assigns an error to establish prejudice to that extent. Id.
 {¶ 42} We conclude that the error the court committed did not deny Defendant a fair trial on his claim of self-defense. Morris admitted to prior felony convictions in his own testimony. Defendant's other testimony concerning Morris's past conduct demonstrated ample grounds for Defendant's belief that he was in danger that his self-defense claim required Defendant to prove. That he knew Morris was convicted of felony offenses for that conduct adds little to *Page 8 
Defendant's belief he was in danger. More importantly, Defendant claimed that he stabbed Morris and Limehouse only after they assaulted him, an act of violence that renders Defendant's knowledge of Morris's propensity for violence secondary to the need for self-defense on which Defendant allegedly acted.
 {¶ 43} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 44} "THE TRIAL COURT ERRED IN SENTENCING IN THAT IT DID NOT PRONOUNCE A SPECIFIC SENTENCE."
 {¶ 45} Defendant complains that the trial court did not comply with the requirement imposed by R.C. 2929.13(B)(3)(a) to impose a stated prison term at the sentencing hearing. Defendant argues that there was confusion on the part of the court as to the multiple counts and multiple indictments, and that he has no idea what the sentence is because the sentence is not stated. We disagree.
 {¶ 46} Defendant failed to object to the sentences the court imposed, forfeiting all but plain error. State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642. While there was some initial confusion on the part of the court as to the various counts and multiple indictments, a review of the entire sentencing hearing shows that any confusion was cleared *Page 9 
up by the court, and the court imposed concurrent six year terms on two felonious assault counts and concurrent four year terms on the other two felonious assault counts, with the six year and four year terms to be served consecutively, for a total sentence of ten years.
 {¶ 47} In any event, a trial court's journalized judgment of conviction and sentence is sufficient to satisfy R.C. 2929.19(B)(3).State v. Williams, Montgomery App. No. 18993, 2002-Ohio-2695. The trial court's "termination entry" clearly specified Defendant's sentence, a total of ten years, which is the same sentence the court pronounced and imposed at the sentencing hearing. No error, much less plain error, is demonstrated.
 {¶ 48} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 49} "APPELLANT ASSERTS INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 50} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient *Page 10 
performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. Id. State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 51} Defendant claims that his trial counsel performed deficiently because he failed to object at trial, although Defendant fails to identify what it is he claims his counsel should have objected to. A review of the trial record discloses that defense counsel did object at trial to certain testimony by the State's witnesses, and moved to strike inappropriate prejudicial testimony. No deficient performance by counsel has been demonstrated.
 {¶ 52} Defendant also suggests that his trial counsel provided ineffective representation because counsel was suspended from the practice of law by the Ohio Supreme Court after Defendant's trial, but before sentencing. The trial court addressed counsel's suspension prior to imposing sentence and concluded that the reasons for counsel's suspension were unrelated to this case and that there was no basis to find ineffective assistance of counsel in this case. Once again, no deficient performance by counsel has been demonstrated and ineffective assistance of counsel has not been established. Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed *Page 11 
DONOVAN, J. And GLASSER, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Mark J. Keller, Esq.
William T. Daly, Esq.
 Hon. A. J. Wagner *Page 1