JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Michael Moreland ("Moreland") appeals his conviction and sentence for felonious assault. Finding some merit to this appeal, we affirm his conviction but remand for resentencing.
 {¶ 2} In July 2003, Moreland was charged with felonious assault stemming from his involvement in a physical altercation with the victim. Moreland hit the victim in the head with a gutter spike, causing injury, which required medical attention.
 {¶ 3} At Moreland's trial to the bench, the victim testified that he first encountered Moreland on February 11 as he left a friend's home. Two days later, the victim returned to visit his friend again. As he left, Moreland confronted him, followed him to his car, and blocked him from entering the car. The victim further testified that when Moreland struck him in the head, he reacted by biting Moreland on the arm and striking him several times.
 {¶ 4} In contrast, Moreland testified that the victim attacked him first and that he acted in self-defense by striking the victim with a gutter spike. He claimed that the victim was a neighborhood drug dealer, supplying drugs to a tenant who lived in his aunt's house. As a result, Moreland confronted him and told him to stop selling drugs in the neighborhood. When the victim returned to the neighborhood a few days later, Moreland was very upset and confronted him again. He testified that the victim tried to ignore him, so he followed him and blocked him from entering his van. He claimed that the victim pulled him into the van and started punching and biting him. He contended the victim attempted to strike him with a gutter spike but he grabbed it and struck the victim in self-defense.
 {¶ 5} On cross-examination, Moreland admitted that he had been drinking that day and had consumed a couple of beers prior to the altercation. He further acknowledged that he had a felony record.
 {¶ 6} The trial court found Moreland guilty of felonious assault and sentenced him to two years in prison.
 {¶ 7} Moreland appeals, raising seven assignments of error.
 Impeachment Evidence {¶ 8} In his first three assignments of error, Moreland challenges the admission of evidence regarding a fight he had with his brother. He argues in his first assignment of error that he was denied a fair trial because the prosecutor improperly elicited testimony concerning the details of the fight as a means to discredit his character and to prove that he acted in conformity therewith in the instant case. According to Moreland, the evidence was inflammatory and irrelevant. He further argues in his second assignment of error that the trial court erred by allowing the admission of such testimony in violation of Evid.R. 404(B) and Evid.R. 608(B). Finally, he argues that it was plain error for the trial court to allow the prosecutor to repeatedly reference the fight and to elicit specific details about it.
 {¶ 9} However, our review of the record reveals that the evidence of Moreland's physical altercation with his brother was properly admitted pursuant to Evid.R. 607 to impeach Moreland's earlier testimony. Evid.R. 607 provides that "the credibility of a witness may be attacked by any party" provided that "the questioner [has] a reasonable basis for asking any question pertaining to impeachment." Accordingly, the admissibility of the testimony under Evid.R. 404(B) and 608(B) is irrelevant because the State was permitted to impeach Moreland on cross-examination under Evid.R. 607 concerning his untruthful statements.
 {¶ 10} On direct examination, Moreland testified that the victim attacked him first and that he never touched him except in self-defense. He claimed that he did not touch him because he understood the "cardinal rule of the street," which dictates that a person does not put his hands on another person without expecting a fight. He further inferred that he would never place his hands on a person, especially during a "heated discussion."
 {¶ 11} On cross-examination, the State asked Moreland if he had ever placed his hands on another person during a confrontation. Moreland responded in the affirmative and admitted that he had been convicted of felonious assault. However, he further stated that the offense occurred years ago and that he had not placed his hands on anyone in years. Based on that response, the State questioned Moreland about the recent fight with his brother, which occurred about one year ago. Accordingly, any testimony elicited concerning the fight was properly admitted to impeach Moreland's earlier statements. We further note that Moreland opened the door to questions concerning the details of the fight by his responses to the prosecutor's questions.
 {¶ 12} However, we recognize that the prosecutor made some inappropriate remarks later in the proceedings.[1] In particular, while asking questions unrelated to the fight involving Moreland's brother, the prosecutor made repeated references to Moreland's "whacking" or "smacking" his brother. The trial court overruled defense counsel's objection in the first instance and defense counsel failed to object in the other two instances. Although we recognize that the remarks were somewhat inflammatory, we find no reversible error in their admission.
 {¶ 13} The instant case was tried to the bench. As a matter of law, a reviewing court presumes that a judge will consider only relevant, material, and competent evidence. State v.Chandler, Cuyahoga App. No. 81817, 2003-Ohio-6037, ¶ 17, citingState v. Post (1987), 32 Ohio St.3d 380, 384, certiorari denied (1988), 484 U.S. 1079. Furthermore, absent an affirmative showing that the trial court failed to consider only properly admitted evidence, there is no reversible error. State v. Wiles (1991),59 Ohio St.3d 71, 86, citing Post, supra.
 {¶ 14} In the instant case, we find that the trial court considered only relevant, material, and competent evidence. There is no indication in the record that the trial court considered Moreland's previous fight with his brother as proof that he committed the assault on the victim. Furthermore, there is no basis to support Moreland's assertion that the trial court found him guilty because he was a "bad person" or that the inflammatory comments of the prosecutor affected the judge's decision. To the contrary, in reaching its decision, the trial court relied on Moreland's own admission that he initiated the confrontation, that he blocked the victim from entering his vehicle, and that he struck the victim with a gutter spike. Accordingly, we find that Moreland was neither materially prejudiced by the remarks nor denied a fair trial by their admission. As a result, we find neither plain error nor prosecutorial misconduct. See, State v.Joseph, 73 Ohio St.3d 450, 1995-Ohio-288 (no plain error unless, but for the error, the outcome at trial would have been different); State v. Smith (1984), 14 Ohio St.3d 13, 14 (no prosecutorial misconduct unless the rights of the accused were materially prejudiced).
 {¶ 15} Accordingly, the first three assignments of error are overruled.
 Ineffective Assistance of Counsel {¶ 16} In his fourth assignment of error, Moreland argues that he was denied the effective assistance of counsel because his trial counsel failed to object to the State's repeated references to the fight with his brother and questions about the details of the fight.
 {¶ 17} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; Statev. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds (1978), 438 U.S. 910; and Strickland v. Washington (1984),466 U.S. 668.
 {¶ 18} To prevail on a claim of ineffective assistance of counsel, Moreland must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, supra, at 687.
 {¶ 19} Having already found that Moreland opened the door to the prosecutor's questions about the fight, we cannot say that his trial counsel was deficient for failing to object. However, to the extent counsel failed to object to some of the inflammatory statements of the prosecutor, we emphasize again that the instant case involved a bench trial, in which the court is presumed to have considered only the relevant, material, and competent evidence. Post, supra. Thus, defense counsel could reasonably assume that the judge would be unaffected by any inflammatory evidence and would disregard any irrelevant evidence. See State v. Bays, 87 Ohio St.3d 15, 28,1999-Ohio-216. Furthermore, as stated above, we find no prejudice to Moreland nor denial of a fair trial.
 {¶ 20} Accordingly, the fourth assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 21} In his fifth assignment of error, Moreland contends that there was insufficient evidence to prove that he "knowingly" caused physical harm or that the gutter spike constituted a deadly weapon because he acted in self-defense.
 {¶ 22} We find Moreland's argument challenging the sufficiency of the evidence misplaced. When reviewing a claim by a defendant that evidence supports a claim of self-defense, the manifest weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks relief from culpability. State v. Reed, Cuyahoga App. No. 83434,2004-Ohio-3124, ¶ 17, citing State v. Martin (1986),21 Ohio St.3d 91. Accordingly, we will treat this argument as a challenge to the verdict based on the manifest weight of the evidence.
 {¶ 23} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by the trier of fact which has "lost its way."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
{¶ 24} "Weight of the evidence concerns `the inclination ofthe greater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 {¶ 25} The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 26} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. State v. Jenks (1991), 61 Ohio St.3d 259,273.
 {¶ 27} Moreland was convicted of felonious assault under R.C.2903.11, which provides in pertinent part: "(A) No person shall knowingly * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 28} Further, R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 29} Moreland argues that, because he acted in self-defense, the trial court erred in finding him guilty. However, our review of the record reveals that Moreland's claim of self-defense is without merit. To establish self-defense as an affirmative defense, the defendant must demonstrate, by a preponderance of the evidence, that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he must not have violated any duty to retreat or avoid danger. State v. Williford (1990),49 Ohio St.3d 247.
 {¶ 30} In the instant case, Moreland admitted that he confronted the victim and prevented him from entering his vehicle and leaving the area. Even assuming Moreland did not throw the first punch, he clearly invited the altercation by confronting the victim and interfering with his right to leave the area.
 {¶ 31} Next, Moreland argues in his sixth assignment of error that the verdict is against the manifest weight of the evidence because the victim's testimony was uncorroborated and unreliable. He contends, in essence, that his own testimony was more credible. However, it is undisputed that Moreland struck the victim in the head with a gutter spike and caused serious injury. Further, Moreland's own admissions negate any claim of self-defense. Accordingly, we cannot say that the trial court "lost its way" in finding him guilty of felonious assault.
 {¶ 32} The fifth and sixth assignments of error are overruled.
 Post-Release Control {¶ 33} In his final assignment of error, Moreland contends that the imposition of post-release control should be vacated because the trial court failed to impose it at the time of sentencing. Although the State concedes that the trial court failed to impose post-release control at the sentencing hearing, it argues that the case should be remanded for resentencing in accordance with this court's decision in State v. Johnson,
Cuyahoga App. No. 80459, 2002-Ohio-4581.
 {¶ 34} The Ohio Supreme Court recently held that when a trial court fails to notify an offender about post-release control at the sentencing hearing, the sentence must be vacated and the matter remanded to the trial court for resentencing. State v.Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph two of the syllabus. Therefore, the trial court must comply with R.C.2967.28(B)(2) and impose, at the sentencing hearing, the mandatory three-year post-release control period for a second degree felony. Accordingly, we vacate the sentence and remand for resentencing.
 {¶ 35} The final assignment of error is sustained in part.
Conviction affirmed. Sentence vacated and case remanded for resentencing consistent with this opinion.
It is ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate issue from this court to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J. and Rocco, J. Concur.
[1] The prosecutor inappropriately implied that Moreland's fight with his brother immediately preceded his altercation with the victim. The prosecutor also made an inflammatory remark by stating that "carpenter's assistants would have access to nails and long spikes that they could put in people's heads." Notably, however, defense counsel objected to these comments and the trial court sustained the objection.